# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONSTANCE DAVIS,<br><br>               Plaintiff,<br><br>v.<br><br>MEGAN J. BRENNAN, POSTMASTER<br>GENERAL, U.S. POSTAL SERVICE,<br><br>               Defendant. | Civil Action No.<br>3:16-cv-4473 (PGS) (TJB)<br><br>**MEMORANDUM<br>AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion by defendant, Megan J. Brennan, to dismiss plaintiff's amended complaint. (Motion to Dismiss, ECF No. 22). Plaintiff's Amended Complaint alleges hostile work environment (Count I), race discrimination (Count II), retaliation (Count III), and sex discrimination (Count IV) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* For the reasons discussed herein, defendant's motion is granted in part.

## BACKGROUND

Plaintiff is an African American woman, who was a Group Leader at the United States Postal Service's Processing and Distribution Center in Trenton, New Jersey. (Amended Complaint, ECF No. 16, at ¶ 7-9). As a Group Leader, Plaintiff was responsible for supervising other custodians. (*Id.* at ¶ 65). Beginning in November 2007, Plaintiff alleges that Bernie Gallagher, Manager of Maintenance, and Michael Shickler, Supervisor of Maintenance Operations, engaged in various discriminatory acts giving rise to her present Title VII Complaint.

Plaintiff has filed five prior EEO complaints: October 16, 1998; August 28, 2000; October 5, 2006; August 3, 2007; and September 14, 2007. (*Id.* at ¶17). Two of those complaints proceeded in a federal civil action, *Davis v. Potter*, No. 3:05-cv-02201(MLC)(TJB), and status conferences in that action were held on October 19, 2007; November 14, 2007; December 5, 2007; and February 5, 2008. (*Id.* at ¶ 22). That case settled on February 27, 2008. (*Id.* at ¶ 23, 24).

Plaintiff alleges that during a private meeting between plaintiff and her manager, Bernie Gallagher, he "defiantly" told her that he knew about her prior EEO complaints. (*Id.* at ¶ 31). Additionally, she alleges that EEO counselors and investigators told defendant about the complaints and that it was common knowledge in the workplace that she had filed complaints. (*Id.* at ¶ 32).

Beginning in or around December 2007, Gallagher followed plaintiff three to four times each day and confronted her, falsely accusing her of not doing her work "in an aggressive, loud, and disrespectful manner in front of other coworkers." (*Id.* at ¶ 37-38). On two separate occasions, on December 12 and 17, 2007, Gallagher expressed that he expected her to clean the north side of the Center "or he would hold her responsible." (*Id.* at ¶ 48-49). He later told plaintiff, "it does not look like you do anything." (*Id.* at ¶ 51). She alleges his behavior "interfered with [her] ability to perform her duties as a Group Leader." (*Id.* at ¶ 39).

During January 2 and 4, 2008 meetings with Gallagher, he refused to recognize that Plaintiff had a medically documented need for a modified work schedule, accused her of lying about it to change her starting time, and cancelled her existing medical accommodation, which had been in place for about one year. (*Id.* at ¶ 52-55). Plaintiff identifies two white females and two white males from whom Gallagher accepted work schedule modifications. (*Id.* at ¶ 59-60).

On January 4, 2008, Gallagher told Plaintiff that he no longer needed her to serve as Group Leader and, moving forward, Plaintiff would work as a custodian. (*Id.* at ¶ 61). That same day, plaintiff went on "stress leave," which she alleges was attributable to her mistreatment, and upon her return on January 22, Schickler, a supervisor, re-assigned her to custodian duties. (*Id.* at ¶ 62-64). Meanwhile, male custodians – she identifies and names five – continued their group leader duties. (*Id.* at ¶ 66-67, 80). Plaintiff retained her title as group leader; but was required to perform more custodial duties than other group leaders. (*Id.* at ¶ 81-82). Plaintiff estimates that from on or about January 2008 until March 2008, she was assigned custodian duties between 60 and 90 percent of the time. (*Id.* at ¶ 68).

Like Gallagher, Schickler followed Plaintiff around work, yelled at her in front of coworkers, criticized her "in a non-constructive manner," and incorrectly accused her of not doing her work. (*Id.* at ¶¶ 75-78). Schickler "told the Plaintiff's crew that [she] had been demoted from [g]roup [l]eader to [c]ustodian" (a lie) and told Plaintiff's coworkers "that he intentionally refused to let the Plaintiff work as a [g]roup [l]eader." (*Id.* at ¶ 83-87). Plaintiff also alleges Schickler bragged that he "had violated the Plaintiff's rights at work" by assigning her custodial duties. (*Id.* at ¶ 90). In March 2008, he "falsely and aggressively" blamed Plaintiff for failing to complete an assigned task but did not address two male custodians who had also been assigned to perform that task. (*Id.* at ¶ 92-93).

Finally, plaintiff claims that in January 2008, Schickler directed another employee to remove plaintiff's cubicle, where she had sat for approximately five years. (*Id.* at ¶ 94-95). Although the Amended Complaint does not state whether other group leaders or custodians were assigned desks or cubicles, plaintiff does allege that no other employee's cubicle was taken apart and put away. (*Id.* at ¶ 97).

On July 22, 2016, Plaintiff filed a complaint, commencing this action. Defendant filed a motion to dismiss, which was granted on April 19, 2018 because Plaintiff did not allege pervasive conduct or that the purported misconduct interfered with her work performance and thus did not set forth a cause of action in support of her hostile and pervasive work environment claims, and also held that plaintiff's retaliation claims failed because the Court was "unable to infer a causal nexus between Plaintiff's alleged EEO and Civil complaints and the adverse employment actions." (April 19, 2018 Memorandum and Order, ECF No. 15, at 5-6).

On May 19, 2018, plaintiff filed a four-count amended complaint, alleging hostile work environment, race discrimination, retaliation, and sex discrimination, in violation of Title VII of the Civil Rights Act. On August 2, 2018, after time to file a motion to dismiss was extended by order, defendant filed a motion to dismiss.

Plaintiff contends the mistreatment interfered with her ability to perform her duties as group leader. She also claims she suffered stress from the discrimination, negatively affecting her health. (*Id.* at ¶ 100).

## LEGAL ANALYSIS

Defendant sets forth four arguments in support of dismissal: (1) that plaintiff is barred from asserting claims relating to conduct which occurred prior to January 19, 2008, forty-five days prior to her administrative complaint; (2) she failed to exhaust administrative remedies with regard to her sex discrimination and hostile work environment claims; (3) she has not sufficiently alleged intentional discrimination based on gender or severe and pervasive conduct in support of her hostile work environment claim; (4) she has failed to allege she suffered an adverse employment action, and (5) she has failed to state a claim for retaliation.

Plaintiff contends: (1) "the doctrine of continuing violation permits the inclusion of discriminatory acts" which occurred prior to January 19, 2008, (Defense Brief, ECF No. 25, at 3); (2) plaintiff did allege sex discrimination and hostile work environment based on gender in her EEO complaint and alternatively those claims "that may not have been raised during the administrative process" are reasonably related to her claims that were, (*Id.* at 6); (3) considering plaintiff's evidence, it is reasonable "to infer the reason for [her] treatment was the Plaintiff's gender" and that "the allegations in the Amended Complaint state severe and pervasive conduct that a reasonable person would find hostile or offensive," (*Id.* at 14-15); (4) the managers' conduct adversely affected the conditions of Plaintiff's employment; and (5) "that the harassment endured by the Plaintiff was . . . because of her prior protected activity," (*Id.* at 27).

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000).

Administrative Time Bar

"[W]hen Title VII remedies are available, they must be exhausted before a plaintiff may file suit." *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995). "An employee of the federal government who believes that she has been the subject of unlawful discrimination must 'initiate contact' with an EEO Counselor in her agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (quoting 29 C.F.R. § 1614.105(a)(1)). "This 45-day time limit operates akin to a statute of limitations." *Grant v. Sec'y United States Dept. of Homeland Sec.*, 698 Fed. App'x 697, 700 (3d Cir. 2017).

However, "where the conduct complained of consists of a pattern that has only become cognizable as illegal over time," courts have adopted an "equitable exception to a strict application of a statute of limitations." *Foster v. Morris*, 208 Fed. App'x 175, 177 (3d Cir. 2006). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* at 177-78 (quoting *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). Whether the "continuing violations doctrine" applies depends on "(1) whether the violations were related in subject matter and (2) whether the acts were recurring." *Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 Fed. Appx. 81, 84 (3d Cir. 2014).

Plaintiff's complaint, which alleges wrongful conduct that occurred both prior to and after the 45-day statute of limitations, does not explicitly allege a continuing violation. Although "[i]t is unsettled in the Third Circuit whether a plaintiff must specifically plead the continuing violation doctrine," recent decisions have adopted this requirement. *Handelman v. New Jersey*, 2016 WL 3691976, at 7 (D.N.J. July 12, 2016); *see also Thompson v. Anthem Co.*, 2018 WL 3647217, at 3

(D.N.J. July 31, 2018).[1] The rationale for this requirement is that "[a]n allegation of a continuing violation provides the necessary relatedness. Without such an allegation, there is merely continuity of employment with what may be no more than sporadic instances of discriminatory conduct, and 'mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'" *Williams v. Home Depot, U.S.C., Inc.*, 1999 WL 788597, at 5 (E.D. Pa. Oct. 5, 1999).

The Court concludes the complaint should be dismissed if it alleges "'mere continuity of employment' with allegations of discrimination along the way." *Thompson*, 2018 WL 3647217, at 4. Although defendant points to several allegations that occurred prior to January 19, 2008, plaintiff also alleged that the "discriminatory conduct *started* shortly after the settlement conference on December 5, 2007," (Amended Complaint, at ¶ 26 (emphasis added)), and that "[t]he discriminatory and retaliatory conduct *started* on or about December 2007 and *ended* on or about April 2008," (*Id.* at ¶ 33 (emphasis added)). Plaintiff also alleged that Gallagher "*continued* to follow [her] and disrespected her for several months," and "[t]he above took place so often that it was an *almost daily* occurrence." (*Id.* at ¶ 42-43 (emphasis added)).

Though these allegations in the complaint do not explicitly use the words "continuing violation," they sufficiently tie the pre-January 19 acts to the later acts such that the plaintiff's allegations constitute continuity of discrimination. Plaintiff's EEO complaint also indicated that the allegations of discrimination were "ongoing," thus affording defendant notice of same. *See Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 25 (2d Cir. 1985) (holding a plaintiff who failed to assert in his administrative filing that his discharge was part of the continuing

---

[1] Another line of cases in this circuit "indicate a willingness to look at the substance of the allegations, rather than specific language of the pleadings, to determine if a plaintiff has properly invoked the doctrine." *Phillips v. Heydt*, 197 F. Supp. 2d 207, 217 (E.D. Pa. 2002).

violation that included subsequent refusals by defendant's subsidiaries to rehire could not allege the refusal to rehire was part of a continuing violation in his complaint). Therefore, reading the complaint in the light most favorable to the plaintiff, it adequately alleges a continuing violation such that the pre-January 19 allegations are properly the subject of this action.

<u>Exhaustion of Administrative Remedies</u>

"The relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984)). Where a plaintiff "fail[s] to raise gender discrimination in the formal administrative process" and "the sole issue investigated [is] that of handicap discrimination" the Third Circuit has held, "Neither the EEOC nor the agency [are] put on notice" and thus the plaintiff "failed to exhaust administrative remedies for [a] gender discrimination claim." *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996). The scope of a private civil action which results from a charge filed with the EEOC is defined by "the investigation which can reasonably be expected to grow out of the charge," "irrespective of the actual content of the Commission's investigation." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *see also Rupert v. PPG Indus., Inc.*, 2009 WL 596014, at 27 (W.D. Pa. 2009).

Plaintiff failed to check the appropriate box on her EEO complaint to indicate an allegation of sex discrimination. (Declaration of Marissa A. Haley ("Haley Decl."), Ex. A, at 1). In addition, the EEO office notified her that it was considering only the issues of race discrimination and retaliation and invited her to respond if she disagreed with the "defined accepted issue(s)." (*See* Haley Decl., Ex. B, at 1). About two weeks later, an EEO investigator again notified her that her complaint would include "only" discrimination based on race and retaliation. (Haley Decl., Ex.

C). The Court therefore concludes that plaintiff's EEO complaint was limited to the claims she filed with the EEO office in April 2009, and that she was notified of this limitation and given an opportunity to amend her complaint; she failed to do so. Plaintiff has failed to exhaust her administrative remedies with regard to Counts I and IV, which are based on sex discrimination.

## Adverse Employment Action

Defendant contends Plaintiff failed to allege that she "suffered an adverse employment action," the third element of her race-based discrimination claim. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. V. Ellerth*, 524 U.S. 742, 761 (1998). The action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015). "Of course, whether an action constitutes an adverse employment action depends on the attendant circumstances." *Langley v. Merck & Co.*, 186 Fed. App'x 258, 260 n.3 (3d Cir. 2006).

"Title VII . . . do[es] not provide relief for general unpleasantness that can occur in the workplace, even if that unpleasantness may be motivated by racial [or sex-based] animus." *Barnees v. Nationwide Mut. Ins. Co.*, 598 Fed. App'x 86, 90 (3d Cir. 2015). "[A]ctions that reduce opportunity for promotion or professional growth can constitute adverse employment actions." *Id.* However, "actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." *Id.*

Plaintiff's brief focuses on "the part of the definition that addresses the 'conditions' of employment." (Plaintiff's Brief, ECF No. 25, at 20). The Third Circuit has recognized that "at least one court of appeals has indicated that moving a person's office to an undesirable location could,

under certain circumstances, constitute an adverse employment action." *Langley*, 186 Fed. App'x 258, 260 n.3 (discussing *Collins v. State of Illinois*, 830 F.3d 692, 704 (7th Cir. 1987). However, the plaintiff in *Collins* was moved to a desk "situated just outside her supervisor's office where a receptionist's desk typically would be located"; and she lost her telephone, business cards, and listings in professional publications. Absent from this complaint is any allegation that plaintiff's loss of her cubicle affected her ability to perform her job duties. She does not allege that fellow group leaders have cubicles or that custodians do not have cubicles.

In light of plaintiff's failure to allege that defendant's actions affected the compensation, terms, conditions, or privileges of her employment, the Court finds her allegations are not sufficiently actionable to set forth a viable claim of race-based discrimination. Count II is therefore dismissed.

Retaliation

To sufficiently plead Title VII retaliation, "a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007). Defendant's motion challenges the adequacy of Plaintiff's pleading as to the second and third elements of this test.

*Adverse Employment Action*

Significantly, "[t]he standard for finding an adverse action is different for retaliation claims as opposed to substantive discrimination claims." *Davis v. Cleary*, 2011 WL 4435697, at 6 (D.N.J. Sept. 22, 2011); *see also Jones v. Castro*, 168 F. Supp. 2d 169, 178 (D.C. Cir. 2016). The anti-retaliation provision of Title VII "extends beyond workplace-related or employment-related retaliatory acts and harm" to "materially adverse" actions that "well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N.*, 548 U.S. at 2414-15). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm[,]" *Burlington N.*, 548 U.S. at 67, and does not "immunize [an] employee from those petty slights or minor annoyances that often take place at work," *Moore*, 461 F.3d at 341.

Although generally increasing scrutiny on Plaintiff's performance would not by itself constitute an adverse employment action, the claims that supervisors assigned Plaintiff custodian – not group leader – duties; undermined her and represented that she had been demoted in front of coworkers; "bragged" about "violat[ing] her rights at work"; and directed her cubicle to be disassembled constitutes conduct which could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341. Plaintiff has therefore sufficiently alleged an adverse employment action in the context of her retaliation claim.

*Causal Connection*

As to the third prong, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341-42. In determining causation, courts consider two primary factors, "timing and evidence of ongoing antagonism." *Wadhwa v. Sec'y, Dept. of Veterans Affairs*, 505 Fed. App'x 209, 215 (3d Cir 2015).

After the Court's prior dismissal on a finding that it was "unclear when . . . purported [EEO] complaints were filed and who was aware of it," (April 19, 2018 Opinion, ECF No. 15, at 6), Plaintiff's Amended Complaint cites to five prior EEO complaints filed by Plaintiff, most recently on August 3, 2007, and September 14, 2007, (Amended Complaint, at ¶ 17). Plaintiff also initiated

a civil action relating to two prior complaints and status conferences were held in October, November, and December 2007 and February 2008. (*Id.* at 20, 22).

Plaintiff's claims that "the EEO Counselor[s] and Investigators told the Defendant that the Plaintiff had filed the EEO Complaints, (*Id.* at ¶ 29); that the existence of the complaint was "public knowledge at the Trenton Processing and Distribution Center," (*Id.* at ¶ 32), and that "[t]he discriminatory conduct started shortly after the settlement conference on December 5, 2007," (*Id.* at ¶ 26), all suggest a causal connection. Further, the strongest allegation of a causal connection is Gallagher's comment in a "defiant[]" tone during a private meeting with plaintiff "that he knew about her prior EEO complaints." (*Id.* at ¶ 31). The Court therefore concludes that Plaintiff has adequately alleged a causal connection between her protected activity and the defendant's adverse employment action.

This is plaintiff's second attempt to file a meritorious complaint. After dismissing plaintiff's initial complaint the Court allowed plaintiff to amend the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-11 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000). The Court finds it would be futile to permit plaintiff to file a second amended complaint.

## <u>Order</u>

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments advanced; for the foregoing reasons, and for good cause shown;

IT IS on this _20_ day of November, 2018,

**ORDERED** that defendant's motion to dismiss (ECF No. 22) is GRANTED IN PART; and it is further

**ORDERED** that Counts I, II, and IV shall be dismissed with prejudice.

_____
PETER G. SHERIDAN, U.S.D.J.