**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CONSTANCE DAVIS,

        Plaintiff,

v.

LOUIS DEJOY, *Postmaster General, U.S. Postal Service*,

        Defendant.

Civil Action No. 16-4473 (ZNQ)

**MEMORANDUM OPINION**

**QURAISHI, Magistrate Judge**

    This matter comes before the Court upon Defendant Louis DeJoy, Postmaster General of the United States Postal Service's ("Defendant") Motion for Summary Judgment on Plaintiff Constance Davis' ("Plaintiff") claim alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981A (the "Motion"). (Mot. for Summ. J., ECF No. 49.) Plaintiff opposed (Pl.'s Opp'n, ECF No. 52), and Defendant replied (Def.'s Reply, ECF No. 60). The Court has carefully considered the parties' arguments, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons set forth herein, Defendant's Motion is granted.

**I.    FACTS**

    **A.    Undisputed Facts**

    The underlying dispute in this matter arises from Defendant's alleged retaliation against Plaintiff for her engagement in protected activity during her employment as a Custodial Group

Leader at the Trenton Processing Distribution Center ("Trenton PDC"), a division of the United States Postal Service. (Def.'s Statement of Material Facts ("DSMF") ¶¶ 1-2, ECF No. 49-2; Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ("PRSMF") ¶¶ 1-2, ECF No. 52-3.) As Custodial Group Leader, Plaintiff's responsibilities included laboring tasks. (DSMF ¶ 12; PRSMF ¶ 12.) The Group Leader position job description indicates that a Group Leader may perform laboring tasks as required. (PSMF ¶ 63, 67; DRSMF ¶ 63, 67.) Some of the tasks Plaintiff performed from January 3, 2008 to May 30, 2008 include: cleaning the workroom floor, cleaning walls, recycling cardboard; cleaning various rooms, cleaning the ovens, operating the scrubber, installing or removing aisle lines, stripping or waxing the maintenance shop, recycling fluorescent lamps, cleaning the trench drain, repairing floors, moving maintenance control equipment, putting away supplies, cleaning dock areas, sweeping aisles, and moving other equipment. (PSMF ¶ 55; DRSMF ¶ 55.)

In October 2007, Bernard Gallagher ("Gallagher") became the Acting Manager of Maintenance at the Trenton PDC. (DSMF ¶¶ 4; PRSMF ¶¶ 4.) Plaintiff did not report directly to Gallagher; during the time frame in question, Michael Shickler ("Shickler") acted as Plaintiff's immediate supervisor, as the Supervisor in Maintenance at the Trenton PDC. (DSMF ¶¶ 8-9; PRSMF ¶¶ 8-9; Plaintiff's Statement of Material Facts ("PSMF") ¶ 5, ECF No. 56-1; Defendant's Response to Plaintiff's Statement of Material Facts ("DRSMF") ¶ 5, ECF No. 60-4.) Before Gallagher's arrival, Shickler treated Plaintiff well. (PSMF ¶ 26; DRSMF ¶ 26.)

As of October 2007, Plaintiff filed five complaints with the Equal Employment Opportunity Commission ("EEOC"), in 1998, 2000, 2006, August 3, 2007, and September 14, 2007, and later filed an action in federal district court. (DSMF ¶ 23; PRSMF ¶ 23; PSMF ¶ 6; DRSMF ¶ 6.) Gallagher was not working at the Trenton PDC when Plaintiff filed her five previous

2

complaints. (DSMF ¶ 24; PRSMF ¶ 24.) Neither Gallagher nor Shickler were involved in Plaintiff's prior complaints to the EEOC. (DSMF ¶ 26; PRSMF ¶ 26.) Plaintiff never saw any documentation evidencing that either Gallagher or Shickler had knowledge of her prior activity or complaints to the EEOC. (DSMF ¶ 29; PRSMF ¶ 29.)

Plaintiff had also filed a prior civil action in 2005, terminating after a settlement agreement was reached on February 27, 2008, and arising out of her complaints to the EEOC in 1998 and 2000. (Settlement Agreement, ECF No. 30, *Davis v. Potter*, 05-2201 (D.N.J. filed Apr. 26, 2005); DSMF ¶¶ 33-34; PRSMF ¶¶ 33-34.) Plaintiff waived her right to anonymity in the EEOC complaints that became part of the federal action. (PSMF ¶ 8; DRSMF ¶ 8.) Neither Gallagher nor Shickler were named as defendants or participated in any capacity in the prior action. (DSMF ¶ 36; PRSMF ¶ 36.) Neither Gallagher nor Shickler attended any of the court conferences in her federal district court action, held on October 19, 2007, November 14, 2007, December 5, 2007, and February 5, 2008. (DSMF ¶¶ 35, 39; PRSMF ¶¶ 35, 39.) Plaintiff never spoke to Gallagher or Shickler about her prior action, and they never spoke about it to her. (DSMF ¶¶ 40-41; PRSMF ¶¶ 40-41.)

After Plaintiff had requested a schedule change, Karin Roy, a Postal Service Specialist, told Gallagher that Plaintiff did not have an approved worker's compensation claim for a change in schedule, and that there was no medical documentation on file explaining the medical need for Plaintiff's permanent schedule change. (DSMF ¶ 18; PRSMF ¶ 18.) Gallagher allowed Plaintiff to continue to work an alternate schedule while he investigated Plaintiff's request to change her official schedule. (DSMF ¶ 19; PRSMF ¶ 19.) Dr. Rafael Hasbun, Plaintiff's doctor of over twenty-five (25) years, submitted a prescription dated January 30, 2008, permitting Plaintiff to return to work full-time from 7:00 a.m. to 3:00 p.m. (DSMF ¶¶ 20-21; PRSMF ¶¶ 20-21.) On February 1,

2008, Plaintiff resumed her official work schedule. (DSMF ¶ 22; PRSMF ¶ 22.) A few months later, Plaintiff began starting at 6:00 a.m., and did so until her last day of work. (PSMF ¶¶ 96-97; DRSMF ¶¶ 96-97.)

Plaintiff initiated informal counseling relating to Gallagher and Shickler on March 4, 2008. (DSMF ¶ 42; PRSMF ¶ 42.) Plaintiff was never demoted; her pay was never decreased; she was not disciplined by Gallagher or Shickler; and neither Gallagher nor Shickler denied Plaintiff sick leave or annual leave. (DSMF ¶ 43-46; PRSMF ¶ 43-46.)

**B.   Disputed Facts**

The following facts are in dispute:

- whether Plaintiff's work station was relocated to another area of the facility, or whether it was dismantled, (DSMF ¶ 11, PRSMF ¶ 11, PSMF ¶¶ 73-83, DRSMF ¶¶ 73-83);

- whether Shickler or Gallagher had knowledge of or mentioned her prior EEOC complaints, (DSMF ¶¶ 27-28, 30-32; PRSMF ¶¶ 27-28, 30-32);

- whether Gallagher engaged in harassment from December 2007 to April 2008 by: pursuing Plaintiff at work and accusing her of not doing her job; telling her that he expected the building to be clean or he would hold her responsible; stated that it does not look like she does anything; and pursued or disrespected Plaintiff for several months, (PSMF ¶¶ 16-21: DRSMF ¶¶ 16-21);

- whether Gallagher told Plaintiff he did not need a Group Leader, and that he needed a Laborer; that Plaintiff would be getting Laborer duties; and that a Group Leader did not need an office, (PSMF ¶ 22; DRSMF ¶ 22);

- whether Gallagher and Shickler told others or Plaintiff that Plaintiff did not want to perform Group Leader duties, that Plaintiff had been demoted, spoke about violating her rights publicly, or treated the other Group Leaders or Laborers in a different manner, (PSMF ¶ 23, 29; DRSMF ¶ 23, 29);

- whether Shickler followed and mistreated Plaintiff; accused her of not doing her work and criticized her work in a demeaning way; and whether before Gallagher's arrival, Shickler did not complain about her work, (PSMF ¶¶ 24-26; DRSMF ¶¶ 24-26);

4

- whether Gallagher and Shickler's treatment interfered with Plaintiff's duties to perform her duties as Group Leader, (PSMF ¶¶ 32-33; DRSMF ¶¶ 32-33);

- whether on January 4, 2008, Gallagher told Plaintiff he no longer needed a Group Leader and that Plaintiff would from then on work as a Laborer, and as a result, Plaintiff had physical symptoms of stress and went on "stress leave" from January 5, 2008 to January 21, 2008, (PSMF ¶¶ 34-36; DRSMF ¶¶ 34-36);

- whether on January 22, 2008, Plaintiff was informed she would only be conducting Laborer duties in the future, whether she was in fact assigned only Laborer duties, and whether she was given less time to complete them than other Laborers, (PSMF ¶¶ 37-41,45-46; DRSMF ¶¶ 37-41, 45-46);

- the distribution of duties Plaintiff completed from January 3, 2008 to May 30, 2008, (PSMF ¶¶ 48-54, 56-59; DRSMF ¶¶ 48-54, 56-59);

- whether as of February 2008, Plaintiff had an approved claim with the Office of Workers Compensation program, dating back to 2000, and still active in 2007, that permitted her to begin work at 6:00 a.m. instead of 7:00 a.m., (PSMF ¶¶ 84-85; DRSMF ¶¶84-85);

- whether Plaintiff's work schedule during the relevant time frame in the Amended Complaint was 7:00 a.m. to 3:00 p.m., (DSMF ¶ 16, PRSMF ¶ 16);

- whether during January meetings, Gallagher questioned Plaintiff's modified work schedule, accused her of lying, and contacted her primary physician, who responded that she was able to work from 7:30 a.m. to 3:30 p.m., (PSMF ¶¶ 86-91; DRSMF ¶¶ 86-91);

- whether instead Dr. Harry Doyle, Plaintiff's psychiatrist, requested the accommodation, and authored three letters to this effect, (PSMF ¶¶ 92-93; DRSMF ¶¶ 92-93); and

- whether Gallagher canceled the accommodation, and a few months later, without submitting additional information, Plaintiff resumed the 6:00 a.m. start time, (PSMF ¶¶ 95-96; DRSMF 95-96.)

## II. **LEGAL STANDARD**

### A. **Summary Judgment**

Summary judgment is appropriate if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact raises a "genuine" dispute if the evidence is such that a reasonable jury could return

5

a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). On a motion for summary judgment, a court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 248.

### B. <u>Retaliation</u>

To state a *prima facie* case of retaliation under Title VII, a plaintiff must show that "(1) that [the plaintiff] engaged in a protected employee activity by Title VII; (2) that the employer took an adverse action against her; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). Title VII provides:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e—3a. "The antiretaliation provision seeks to secure [a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender based status] by preventing an employer from interfering (through retaliation) with an employee's efforts

to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). "The antiretaliation provision protects an individual not from all retaliation, but retaliation that produces injury or harm." *Id.* at 67.

"A plaintiff seeking to prove her case through indirect evidence . . . may do so by applying the familiar *McDonnell Douglas* burden-shifting framework. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citation omitted). "After establishing a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. *Id.* (citing *Moore*, 461 F.3d at 342). If the employer accomplishes this, the burden shifts back to Plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action. *Id.* The Supreme Court of the United States has more recently elaborated that "Title VII retaliation claims must be proven according to traditional principles of but-for causation," meaning that "[t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. v. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

In interpreting the first prong, the Court contemplates that "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels*, 776 F.3d at 193 (citations omitted). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore*, 461 F.3d at 341.

For an employer's acts to "satisfy the second prong of a *prima facie* case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington Northern*, 548 U.S. at 68). The element of material adversity is highlighted because "it is important to separate significant from trivial harms," further stating "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights and minor annoyances that often take place at work and all employees experience." *Id.*

Regarding the third element, "[t]o demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" *Id.* (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007)). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (quoting *Burrus v. United Tele. Co.*, 683 F.2d 339, 343 (10th Cir.)). "[T]emporal proximity alone [is] insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive,' . . . nineteen months [is] too attenuated to create a genuine issue of fact." *Id.* (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citing *Robinson v. Se. Pa. Transp. Auth.*, 982 F.3d 892, 895 (3d Cir. 1993)).

### III. <u>DISCUSSION</u>

Defendant argues that it is entitled to summary judgment because: Plaintiff is unable to establish a *prima facie* case of retaliation; even if she could, Defendant has advanced legitimate, non-retaliatory reasons for its actions; and that despite lengthy discovery, Plaintiff is unable to show that these reasons are pretextual. (Def.'s Moving Br. 1, ECF No. 49-1.) The Court will address each of these arguments in turn.

### A. *Prima Facie* Case of Retaliation

#### 1. Prong II: Material Adversity

To state a *prima facie* case of retaliation under Title VII, the plaintiff must show "(1) that [the plaintiff] engaged in a protected employee activity by Title VII; (2) that the employer took an adverse action against her; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340 (citation omitted). Plaintiff engaged in protected activity in the form of filing complaints with the EEOC, and initiating and participating in an action in federal district court, which satisfies the first prong. (DSMF ¶ 23; PRSMF ¶ 23; PSMF ¶ 6; DRSMF ¶ 60); *Daniels*, 776 F.3d at 193 (citations omitted).

Plaintiff has not, however, provided evidence to cause a genuine dispute of material fact that Defendant took a materially adverse action against her. The Supreme Court has clearly articulated that "it is important to separate significant from trivial harms," and an adverse action is material when it could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citations omitted). "Title VII . . . does not set forth "a general civility code for the American workplace." *Id.* (citation omitted). The inquiry is necessarily context dependent, *id.* at 69, and courts are charged with determining "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,'" including the 'frequency of the discriminatory conduct; its severity; whether it is physically

9

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). "[C]onduct must be extreme to amount to a change in the terms and conditions in employment." *Id.* at 788.

Plaintiff claims that Defendant retaliated against her when Gallagher and Shickler criticized or verbally harassed her, dismantled her work station, required her to perform laboring tasks, and did not alter her work schedule per her request. In New Jersey, "courts have consistently found that an employee's perception that [she] has been micromanaged, criticized, or scrutinized by [her] supervisor fails to rise to the level of 'material adversity,' and is not actionable as part of a Title VII retaliation claim." *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 428 (D.N.J. 2009). Plaintiff's claims that Gallagher and Shickler followed her around, accused her of not doing her job, told her that they expect the building to be clean or that they would hold her responsible, and telling her it did not look like she does anything, (PSMF ¶¶ 16-21, 24-26; DRSMF ¶¶ 16-21, 24-26), and Gallagher and Shickler's alleged statements about not needing a Group Leader, or that Plaintiff would be assigned laboring tasks, (PSMF ¶ 22-23, 29, 34-41, 45-46; DRSMF ¶ 22-23, 29, 34-41, 45-46), do not rise to the level of material adversity. *See Atkinson v. N. Jersey Developmental*, 453 F. App'x 262, 263, 266 (3d Cir. 2011) (affirming summary judgment that the defendant did not engage in retaliation when supervisor gave the plaintiff a low performance review, issued her a waring for arriving late, denied her vacation requests, adjusted her duties, and got into a heated argument with her); *Dicks-Kee v. New Jersey Judiciary*, No. 12-6620, 2014 WL 7339458, at *8 (D.N.J. Dec. 23, 2014) (finding that the supervisor's treatment of "hostility, condescension, and disrespect," including yelling at her, interrupting her conversations, barging into her office unannounced, and acting dismissively towards her did not rise to the level of

material adversity); *LaSalle v. Port Auth. of New York & New Jersey*, No. 12-2532, 2013 WL 6094339, at *12 (D.N.J. Nov. 19, 2013) (finding that it was not materially adverse when the plaintiff was "micro-managed," was accused of stealing time, his supervisor was "condescending and belittling," called the plaintiff a liar, cursed at him, and embarrassed him on at least one occasion, among other things); *DeLuzio v. Family Guidance Ctr. of Warren Cty.*, No. 06-6220, 2010 WL 1379766, at *14 (plaintiff's complaints of micromanaging and mistreatment were not materially adverse).

The dismantling or relocation of Plaintiff's cubicle is similarly not a materially adverse action, (DSMF ¶ 11, PRSMF ¶ 11, PSMF ¶¶ 73-83, DRSMF ¶¶ 73-83); *see Siroy v. Jobson Healthcare Info. LLC*, No. 16-4523, 2019 WL 1598021, at *7 (D.N.J. Apr. 15, 2019) ("The relocation of cubicles or assigned work posts generally does not by itself constitute a materially adverse change in employment.") Regarding Plaintiff's requested schedule change, this too fails to demonstrate material adversity. The parties do not dispute that Plaintiff was permitted to work during her desired hours while Gallagher investigated her request further. (DSMF ¶ 19; PRSMF ¶ 19.) Upon Gallagher's receipt of a prescription from her physician, she returned to her regular work schedule. (DSMF ¶¶ 20-22; PRSMF ¶¶ 20-22.) A few months later, she began working at 6:00 a.m. again, and was permitted to do so until her last day of work. (PSMF ¶¶ 96-97; DRSMF ¶¶ 96-97.) Restructuring an employee's work schedule by a single hour would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citations omitted).

Plaintiff's assignment to conduct laboring tasks is also not materially adverse. It is undisputed that as Custodial Group Leader, Plaintiff is required to perform some laboring tasks. (DSMF ¶ 12; PRSMF ¶ 12.) It is also undisputed that the Group Leader position job description

11

indicates that a Group Leader may perform laboring tasks as required. (PSMF ¶ 63, 67; DRSMF ¶ 63, 67.) While "reassignment of job duties is not automatically actionable," the Supreme Court has explained that "one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Burlington Northern*, 548 U.S. at 70-71. "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case," and here, it is critical and undisputed that Plaintiff was never demoted, her pay was never decreased, she was not disciplined by Gallagher or Shickler, and neither Gallagher nor Shickler denied Plaintiff sick leave or annual leave. (DSMF ¶ 43-46; PRSMF ¶ 43-46.) In the context of the whole, Plaintiff's claims of mistreatment are insufficient to establish material adversity.

### 2. Prong III: Causal Connection

"To demonstrate a causal link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" *Daniels*, 776 F.3d at 196 (citing *LeBoon v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007); *Marra*, 497 F.3d at 302)). "In the absence of such a close temporal proximity, [the Court] consider[s] the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action. *Daniels*, 776 F.3d at 196 (citations omitted).

Assuming, *arguendo*, that Plaintiff could show Defendant's actions were materially adverse, Plaintiff has still failed to show that her engagement in protected activity was the cause of the materially adverse action. It is undisputed that neither Gallagher nor Shickler were named

as defendants or participated in any capacity in the prior action in federal court. (DSMF ¶ 36; PRSMF ¶ 36.) Neither Gallagher nor Shickler attended any of her court conferences in her federal district court action. (DSMF ¶ 39; PRSMF ¶ 39.) Plaintiff never spoke to Gallagher or Shickler about her prior action, and they never spoke about it to her. (DSMF ¶¶ 40-41; PRSMF ¶¶ 40-41.) Plaintiff has not established any affirmative evidence that Gallagher or Shickler knew of, had any involvement in, or spoke with her about her prior action. Though it is disputed whether Shickler or Gallagher had knowledge of or mentioned her prior EEOC complaints (DSMF ¶¶ 27-28, 30-32; PRSMF ¶¶ 27-28, 30-32), Plaintiff bears the burden of demonstrating Defendant's actual knowledge that she engaged in protected activity, *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) ("[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."); *Daniels*, 776 F.3d at 196 ("The plaintiff, however, cannot establish there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted.").

Gallagher was not working at the Trenton PDC when Plaintiff filed her five previous complaints. (DSMF ¶ 24; PRSMF ¶ 24.) Neither Gallagher nor Shickler were involved in Plaintiff's prior complaints to the EEOC. (DSMF ¶ 26; PRSMF ¶ 26.) Plaintiff never saw any documentation evidencing that either Gallagher or Shickler had knowledge of her prior activity or complaints to the EEOC. (DSMF ¶ 29; PRSMF ¶ 29.) Plaintiff admits that she does not know whether Shickler knew about her prior EEOC activity, that she never spoke to him about it, and that she has no evidence that he knew about it. (Pl.'s Dep. Tr. 73: 21-23; 74: 21-24; 76:25-77:2, ECF No. 49-4.)

Plaintiff directs the Court to a single comment in a private meeting with Gallagher to show his knowledge, during which time she stated she was going to file another complaint with the EEOC, and he responded that he does not care about her complaints. (*Id.* 55:7-22.) Plaintiff stresses that his knowledge is evidenced by Gallagher's pluralization of the word "complaints." (*Id.* 61:7-66:18.) It is not the Court's role to weigh the evidence or determine Plaintiff's credibility. However, taking this statement as true, Plaintiff still fails to show a causal connection because she is unable to rely on temporal proximity alone. *See Mercer v. SEPTA*, 608 F. App'x 60, 65 (3d Cir. 2015) ("The adverse action must occur within days, not months, of the protected activity."); *LeBoon*, 503 F.3d at 233 ("[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment."); *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) ([A] temporal proximity of greater than ten days requires supplementary evidence of retaliatory motive."). Plaintiff is unable to show that Gallagher had any knowledge of her participation in the district court action, including the conferences in which she participated. Plaintiff has not been able to demonstrate a pattern of antagonism, or any other evidence to suggest retaliatory animus. In terms of inconsistencies in Defendant's proffered explanation, Plaintiff evinces a discrepancy between Gallagher's statement that both Group Leaders had their cubicles relocated, (Gallagher Decl. ¶ 12, ECF No. 49-5), and the statements of her coworkers that only Plaintiff's cubicle was removed, (Mot. for Summ. J. Ex. A, Statement of Diamond McSwain ¶ 5, Statement of Ronald Tressel ¶ 11, Statement of Robert Whitaker ¶ 10, Statement of Deborah McKenzie ¶ 11, Statement of Alvina Wimbish ¶ 12, Statement of Hank Hom ¶ 10, ECF No. 52-4.) As stated earlier, even if Plaintiff's cubicle was the only one that was removed, reading the facts in the light most favorable to Plaintiff, Plaintiff was provided another area in which she could complete her paperwork, the Supervisor's hub, and

Plaintiff also completed her work on a table in the Building Services stockroom in the back of the building. (PSMF ¶ 83 (citing Pl.'s Dep. Tr. 161:8-21).)

For these reasons, assuming Gallagher did have actual knowledge of Plaintiff's September 14, 2007 complaint, the timeframe is too remote, a single discrepancy in Defendant's explanation is insufficient, and the outcome of the discrepancy would not result in a genuine dispute of material fact. Plaintiff can provide no other evidence to support a causal connection between adverse actions and her engagement in protected activity. Because Plaintiff cannot show material adversity or causal connection between her engagement in protected activity and any adverse action, Plaintiff cannot state a *prima facie* case of retaliation. Because Plaintiff is unable to state a *prima facie* case of retaliation, summary judgment for Defendant is appropriate.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted. (Mot. for Summ. J., ECF No. 49.) The Court will enter an Order consistent with this Memorandum Opinion.

Dated:  August 17, 2020

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE